HENRY DUESENBURG, Appellee, v. J. T. GOLDSWORTHY and M. E. GRIFFIN, Appellants.

**Real property:** CONTRACT OF SALE: FRAUD: EVIDENCE. In this action
1    to cancel a contract for the sale of land and for other relief, because of alleged misrepresentation in the number of acres and reliance thereon by plaintiff, the evidence is reviewed and held to support plaintiff's contention.

**Same:** RESCISSION: TENDER. Ordinarily a contract cannot be rescinded
2    without tendering back the consideration; but where the plaintiff only asked rescission in case defendant could not convey the land he contracted to sell he in effect placed the title in the hands of the court, subject to whatever finding the court might make under the facts, and there was a sufficient offer to return.

**Same:** RESCISSION: JUDGMENT. Where the contract in suit was can-
celled and judgment entered for plaintiff for the full amount of
the consideration, including the amount of an unpaid portion of the
purchase price, which plaintiff secured by notes and a mortgage back
on the land, the decree should provide for release of the judgment
to the amount of the mortgage indebtedness, upon payment of the
same by defendant, and surrender of the notes which plaintiff gave.

*Appeal from Clay District Court.*—HON. A. D. BAILIE, Judge.

TUESDAY, MARCH 24, 1914.

PROCEEDINGS in equity to recover damages based on
fraud, for cancellation and rescission of contract, and for
judgment for the value of property paid thereunder. From a
decree in favor of plaintiff, the defendants appeal.—*Modified*
and *Affirmed.*

*F. F. Faville* and *Heald & Cook,* for appellants.

*J. W. Cory* and *E. A. Morling,* for appellee.

WITHROW, J.—I. In 1906 the plaintiff and the defendant
entered into a contract under which, in consideration of the
conveyance by the defendant to the plaintiff of lot 1 in section
25, in Lake township, Clay county, Iowa, the plaintiff, Dues-
enburg, was to furnish to the defendant nursery stock of
designated kinds and quantities, and at prices fixed, in the
amount of $850, and in addition was to pay in money the
further sum of $350, making the total consideration for the
land $1,200. The agreement provided that the conveyance
was not to be made until the nursery stock was delivered, and
by growing test shown to be in first-class condition, to be set
out on the farm of Goldworthy without expense to him, and
that trees which did not meet the requirements of the contract
were to be replaced by Duesenburg. In due time the obliga-
tion of the plaintiff as to the nursery stock was met, and the
parties completed the contract, a deed being executed to the

plaintiff, he at the time executing two notes amounting to $350 which were secured by mortgage on the conveyed land. The deed and mortgage were executed May 29, 1909.

The land covered by the contract and the final conveyance, being lot 1, as described, was a subdivision of a government survey, and upon the plat of the original survey was

1. REAL PROPER-
   TY: contract of
   sale: fraud:
   evidence.

shown to contain one and eighty-one one-hundredths acres. The title of the defendant was acquired from the Chicago, Milwaukee & St. Paul Railway Company, and the deed to him described the lot as containing the quantity of land shown by the plat, one and eighty-one one-hundredths acres. The contract between the parties to this action contained the provisions that "it is hereby expressed and understood by both parties that lot one is sold as lot one, no number of acres mentioned." The deed subsequently made contained no statement of quantity. It is the claim of the plaintiff that at the time of entering into the contract, it was represented to him that the lot conveyed contained twenty acres or more, and that its reasonable value was $60 per acre, from which the total consideration of $1,200 was determined. He claims that the defendant pretended to point out to him the boundaries and area of the lot; in so doing, stated that it ran to the edge of a certain marsh or body of water, and to a row of trees which he pointed out; that the lot had been surveyed and contained twenty-one acres. The plaintiff claims that the representations as to quantity and boundary were false and untrue, made for the purpose of deceiving him; that he relied upon them, and because of such entered into the contract, made payment, and received final conveyance in such belief. He says that said lot had, prior to such time, been twice surveyed by the United States government, and was found to contain one and eighty-one one-hundredths acres only, and that the land outside the lot boundaries which was pointed out by the defendant and claimed to be owned by him was, after the survey of 1898, claimed by the state of Iowa as swamp lands, by it conveyed to Clay county,

and by said county to one M. E. Griffin, who also was named as a defendant. Plaintiff prayed that the defendants Goldsworthy and Griffin be required to show whether they claimed title to the twenty-one acres, and, if Griffin did not, that he disclaim title to it, that if Goldsworthy had or claimed title to the twenty-one acres, it be quieted in plaintiff, and that if he did not have title to the twenty-one acres, the contract and conveyance be canceled and rescinded, and that plaintiff have judgment for money recovery for the value of the nursery stock furnished by him, also for the sum of the $350 purchase-money notes given by him, and for damages.

The defendant Goldsworthy admitted representing to plaintiff that he was the owner of lot 1, and also that Griffin had a deed to certain lands in section 25. He denies all allegations of fraud, but says that he told the plaintiff that the deed for lot 1 called for one and eighty-one one-hundredths acres; that he had been paying taxes on more than ten acres; that he did not know any of the corners, excepting the southeast one; and that if plaintiff traded, he must take his chance on the number of acres. He avers that he again told this to the plaintiff when the deed was executed, and that plaintiff at all times acted with such knowledge. Estoppel, acquiescence, and laches are also pleaded by the defendant. He also filed a counterclaim for expenditures and shortage under the nursery contract. After the commencement of the action, Griffin, who was claiming ownership of a part of the land alleged to have been pointed out and conveyed to the plaintiff, for a consideration of $350 paid him by Goldsworthy, disclaimed to the latter all interest in the land.

The trial court made a finding of facts, holding that the charge of fraud had been sustained; that the amount of land in the tract which defendant had any interest in was not to exceed thirteen and seventeen one-hundredths acres; and decree was entered canceling and rescinding the contract and deed, and awarding to plaintiff as a recovery the value of the nursery stock furnished by him, subject to some offsets, together with

judgment for the amount due on the purchase-money notes, given by plaintiff, which were outstanding, and held by one Culbert, who was not chargeable with notice of any infirmity entering into them.    From this decree the defendant appeals.

II.  As shown by a plat introduced in evidence the land in controversey, which bordered on what is designated as Mud Lake, contained thirteen and seventeen one-hundredths acres. Of this amount one and eighty-one one-hundredths acres is represented by lot 1, covered by the conveyance of appellant, and the remainder, or eleven and thirty-seven one-hundredths acres is that lying between lot 1 and the meander line of Mud Lake.  This does not represent the limits of the claim made by the appellant as to the extent of his rights at the time of the contract, it appearing that it reaches out to include a total area of about twenty to twenty-two acres, but to such excess there is no showing of any title or interest which would be the subject of an order for specific performance, or decree quieting title in favor of the appellee.

The testimony of the appellee was, in substance, that he went to see Goldsworthy, first, in the fall of 1905, to endeavor to sell him some nursery stock; that in January, 1906, Goldsworthy wrote him that he was ready to make a deal, and later, when Duesenburg went to see him, he was told by Goldsworthy that he had a piece of land that he wanted to put in, between twenty and twenty-two acres.  They went out to see it.  There was no road running to it, but Goldsworthy said that could be secured at any time.  He said he had never measured the land, but another man had done so, and said there was twenty-one acres.  He pointed out the boundaries on the south and east, and said it ran to the water's edge on the west, but there was no certain line there, as the water varied in height. He said the land was worth $60 per acre.  "He told me he had a clear title to the land, between twenty and twenty-one acres. He pointed out a row of trees which he said stood on the land. Said he could furnish an abstract of title."  When they entered into the contract, and when the appellee discovered the

clause stating that no number of acres were mentioned, he asked what was meant by that, to which the appellant replied that there might be a little fraction, more or less, it was twenty or twenty-two acres, but it was not necessary to put in just the amount. He testified that he believed he had title to that amount, and did not learn differently until in August, 1909, after the deed was made to him. The appellee testified that he had no knowledge of any claim of the United States government, state, or of swamp land rights or reservations, but relied upon the representations as to the quantity and value. He resided in another county, and after the contract, and up to the time of the deed, the land had been looked after for him by Goldsworthy. Other witnesses testified that Goldsworthy had tried to trade the land to them, stating that the tract contained twenty or twenty-two acres; and, in disposing of the notes and mortgage, given as part of the trading or purchase price, the person to whom they were assigned in trade for a team of horses, one Culbert, testified that Goldsworthy said the mortgage was secured by twenty-three acres of land. The scrivener who drew the contracts between Culbert and the appellant also testified that the latter said there was twenty or twenty-one acres of the land. It is not necessary to go further in a recitation of the evidence introduced on the part of the appellee, more than to state that in its entirety it gives strong support to his claim that he was induced by fraud to enter into the contract.

The appellant Goldsworthy testified that before making the contract he told Duesenburg of the acreage named in the conveyance to him, and also that he had been paying taxes on thirteen acres, which he claimed was covered by his deed as being actually lot 1, and he also testified that Duesenburg went on the land while appellant sat in his buggy, and upon his return from it stated that there was over twenty acres in the tract. This is denied by the appellee. There is no sufficient showing of fact to meet the testimony on the part of the appellee as to appellant's want of ownership of the amount

claimed by him, and of his knowledge of that fact. Taken in its entirety, we think there is full support for the conclusion of fact reached by the trial court that Goldsworthy represented his ownership to cover twenty-two acres, with such knowledge by him and want of knowledge by Duesenburg as amounted to fraud, and that by reason of such Duesenburg was induced to enter into the contract.

Questions which have been presented in argument as to rights acquired as a riparian owner, we think, are without bearing upon this case under the facts. The rights of the appellee cannot be made to depend upon a claim resting at best upon some elements of doubt, but upon the representation of absolute ownership under conveyance to him.

III. The claim of the appellant that rescission of a contract cannot be made without tender back of the consideration, while stating a true general rule, does not control in this case. The proceeding only asked rescission and cancellation as an alternative right, depending upon a failure by the trial court to find that Goldsworthy had the right to convey, or be compelled to convey, twenty-one acres. The plaintiff by his prayer in effect placed in the hands of the court the title held by him, and subjected it to whatever finding the court would make under the facts. There was, by so doing, a sufficient offer to return; for until the issue as to quantity was determined, the right to rescind because of fraud must have been in abeyance.

2. SAME: rescission: tender.

IV. The findings of the trial court that the appellant was liable for the value of the nursery stock, and the amount found as the basis of the judgment on that branch of the case, we approve. Due allowance was made for all credits to which the appellant was shown to be entitled.

3. SAME: rescission: judgment.

V. We have referred to the fact of the existence of the mortgage given by Duesenburg, and which is yet unsatisfied. The trial court, upon that part of the prayer of the petition which asked for a rescission of the contract and deed of

Goldsworthy was found not to be the owner of twenty-one acres at the time of the sale, decreed that the contract be canceled and rescinded, which had the effect of restoring to Goldsworthy whatever interest was conveyed by him to Duesenburg; but in being thus returned, it was charged with an incumbrance created as a part of the transaction, and with which it should properly be burdened. In addition to this, however, the trial court entered judgment against Goldsworthy for the amount due on the notes which had been given by Duesenburg, and secured by the mortgage, in effect doubling the liability on this branch of the judgment. To hold the land as it was conveyed by him Goldsworthy would be obliged to pay the mortgage indebtedness; in so doing he would, if the notes were then surrendered to Duesenburg, relieve the appellee of the burden of that outstanding obligation against him, and as against which the trial court properly sought to protect him; but in paying said mortgage indebtedness and relieving the land of that burden he would not, under the decree entered, be freed from liability on the judgment entered for that indebtedness. We think that provision should be made whereby, upon the payment by Goldsworthy of the amount of the mortgage indebtedness, with the surrender to Duesenburg of the notes which he gave, and which were secured by the mortgage, the appellant should then be entitled to have canceled that part of the judgment based upon the notes, which was stated in the decree as $588.69, with interest. The decree should be modified to that extent.

The costs of this appeal will be taxed as follows: To the appellee one-fourth, and to the appellant three-fourths.

The cause will be remanded for decree in conformity with the conclusions we have reached.

*Modified* and *Affirmed*.